1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EDNA SANOY and ISRAEL S. SANOY,<br><br>Plaintiffs,<br><br>        v.<br><br>AURORA LOAN SERVICES, LLC, et al.,<br><br>Defendants. | CASE NO. C11-1440MJP<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court on Defendant Aurora Loan Services LLC's

("Aurora") and Mortgage Electronic Recording Systems, Inc.'s ("MERS") motion to dismiss in

which Defendant Cal-Western Reconveyance Corporation of Washington ("Cal-Western") has

joined. (Dkt. Nos. 31, 32.)  Having reviewed the motion, Plaintiffs' response (Dkt. No. 33), the

replies (Dkt. Nos. 34, 36), and all related papers, the Court GRANTS the motion and

DISMISSES this action.

**Background**

1    Plaintiffs Edna and Israel Sanoy commenced this action to stop the non-judicial

2  foreclosure of a home they own, but do not live in.  Plaintiffs filed the action pro se against

3  Aurora, MERS, and Cal-Western, alleging various violations of federal and state laws.  Plaintiffs

4  moved for a temporary restraining order ("TRO") to stop the foreclosure sale.  (Dkt. No. 5.)

5  After a holding a hearing during which Defendants agreed to discuss possible loan modifications

6  and reschedule the foreclosure sale for at least thirty days, the Court denied the TRO.  (Dkt. No.

7  19.)  Ultimately, the trustee's sale took place on October 28, 2011.  (Dkt. No. 31 at 5.)

8  Defendants now move to dismiss the action for failure to state a claim.  The Court reviews the

9  pertinent facts of the complaint.

10    On March 23, 2007, Plaintiffs obtained a loan from American Brokers Conduit for

11  $300,000, the secured by an adjustable rate note.  (Compl. Ex. B.)  A deed of trust securing the

12  note named American Bankers Conduit as the Lender and MERS as the beneficiary of the note.

13  (Id.)  On September 20, 2010, MERS assigned the deed of trust to Aurora, and recorded the

14  assignment on October 6, 2010.  (Compl. Ex. D.)   On September 29, 2010, Aurora appointed

15  Cal-Western as successor trustee, and recorded the appointment on October 11, 2010.  (Compl.

16  Ex. C.)  Cal-Western recorded a notice of trustee's sale on June 6, 2011, stating that Plaintiffs

17  were arrears on their mortgage payments.  (Dkt. No. 6 at 5-9.)  The foreclosure sale was

18  scheduled for September 9, 2011.  (Id.)

19    In letters dated June 21, 2011 and July 5, 2011, Plaintiffs sent "Qualified Written

20  Request[s]" to Aurora in which they demanded that Aurora validate the debt pursuant to the Fair

21  Debt Collection Practices Act ("FDCPA") and the Real Estate Settlement and Procedures Act

22  ("RESPA").  (Compl. Ex. F.)  On June 21, 2011, Plaintiffs also sent letters to Cal-Western,

23  asking for a validation of the debt that was the subject of the foreclosure notice Cal-Western

24

1    recorded.  (Compl. Ex. G at 1-7.)  They sent the same letter to Aurora.  (Id. at 9-10.)  On July 28,

2    2011, Plaintiffs sent a second letter Aurora, acknowledging that they had received a letter dated

3    July 7, 2011, but stating that they did not believe the mortgage note produced to them was valid.

4    (Compl. Ex. G at 11-12.)  Aurora's letter is attached to the complaint, and it sets forth the

5    amount owing on the loan and a copy of the promissory note.  (Compl. Ex. G. at 15-16 (Dkt. No.

6    1 at 73-74).)  The letter states that a separate response to Plaintiffs' letters would be sent under

7    separate cover.  (Id.)  Plaintiffs did not include any further correspondence from Aurora or Cal-

8    Western in the complaint, but allege that they received none.

9          In its opposition to Plaintiff's TRO, Aurora and MERS included Aurora's letters in

10   response to Plaintiffs' "qualified written request."  (Dkt. No. 16-5, 16-6, 16-7.)  On June 21,

11   2011, Aurora's counsel sent an eleven page letter addressing questions raised by Plaintiffs and

12   disputing Plaintiffs' claims that they did not owe any money to Aurora.  (Id.)  Aurora's counsel

13   also sent a letter dated July 13, 2011 as a response Plaintiffs' demand for rescission.  (Dkt. No.

14   16-6.)  Aurora's counsel sent a third letter on August 10, 2011, responding to Plaintiffs' request

15   for evidence of Aurora's ownership of the mortgage promissory note.  (Dkt. No. 16-7.)  The

16   Court was asked to take judicial notice of the letters Aurora' counsel sent, and Plaintiffs have

17   made no objection.  (See Dkt. No. 15 at 5-6.)  The Court accepts judicial notice of these letters as

18   they are not subject to dispute, yet at are central to many of the factual allegations of Plaintiffs'

19   complaint.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (stating that a

20   document can become part of the record on a motion to dismiss without converting it into a

21   motion for summary judgment if it "forms the basis of the plaintiff's claim").

22         Plaintiffs' complaint sets forth eleven "claims for relief," out of which the Court finds

23   only five distinct causes of action for: (1) violations of the Washington Deed of Trust Act; (2)

24

ORDER GRANTING MOTION TO DISMISS- 3

1   violations of the Truth in Lending Act ("TILA"); (3) violations of RESPA; (4) violations of the

2   FDCPA; and (5) violations of the Fair Credit Reporting Act ("FCRA"). Defendants have moved

3   to dismiss all of these causes of action. Plaintiffs, however, have only provided argument in

4   opposition on their FDCPA claim and appear to concede that the other claims lack merit. The

5   Court briefly addresses all five causes of action, placing primary focus on the FDCPA claim.

6                                      **Analysis**

7   A.      <u>Standard</u>

8           On a motion to dismiss, the Court must accept the material allegations in the complaint as

9   true and construe them in the light most favorable to Plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792

10  F.2d 896, 898 (9th Cir. 1986). A motion to dismiss filed pursuant to Rule 12(b)(6) tests the

11  sufficiency of the complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). "To survive a

12  motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

13  claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937,

14  1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007)). The plaintiff must

15  provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause

16  of action will not do." <u>Twombly</u>, 550 U.S. at 555. Here, Plaintiffs fail to cite either <u>Iqbal</u> or

17  <u>Twombly</u> and instead invoke the "no set of facts" standard that no longer has application. (Dkt.

18  No. 31 at 3.) The standard Plaintiffs urge is no longer valid law and will not be applied.

19  B.      <u>Request for Discovery</u>

20          Plaintiffs primarily oppose the motion to dismiss on the theory that Defendants have

21  refused to participate in discovery and they have not provided documents validating the debt.

22  Plaintiffs provide no support for the assertion that Defendants have not participated in discovery.

23  Defendants have shown that they have made efforts to engage in discovery meetings with

24

ORDER GRANTING MOTION TO DISMISS- 4

1    Plaintiffs, but have not received responses from Plaintiffs.  Plaintiffs have failed to explain what

2    they seek and why such information would impact the motion to dismiss.  Moreover, Plaintiffs

3    do not dispute the accuracy of the letters Defendants sent in response to their "written qualified

4    requests."  These letters are central to the allegations of Plaintiffs complaint and go to the issue

5    of validation of the debt.  The Court does not find any basis on which to delay deciding the

6    motion to dismiss to conduct discovery given the vagueness of Plaintiffs' request and the

7    absence of any outstanding discovery requests.

8    C.    FDCPA

9        Plaintiffs have not set forth a cognizable claim for violations of the FDCPA, as they have

10   not shown that Defendants failed to respond to their debt dispute.

11       Under the FDCPA, a debt collector is obligated to send notice of the collection of a debt

12   to the consumer setting out the amount of the debt, the name of the creditor, and an explanation

13   of the consumer's rights to dispute the debt.  15 U.S.C. § 1692g(a).  A consumer may dispute a

14   debt and request a verification of the debt before the creditor can continue any collection

15   activities.  15 U.S.C. § 1692g(b).  If a creditor receives a request for verification, it must

16   "obtain[] verification of the debt or a copy of a judgment, or the name and address of the original

17   creditor, and [mail] a copy of such verification or judgment, or name and address of the original

18   creditor, . . . to the consumer by the debt collector."  Id.

19       In their complaint, Plaintiffs allege that Cal-Western and Aurora have violated the

20   FDCPA by failing to verify the debt and to respond to Plaintiff's request for validation of the

21   debt.  (Compl. ¶ 19.)  The record suggests otherwise.  First, Plaintiffs were put on notice of the

22   debt through the notice of non-judicial foreclosure sale, which identifies the deed of trust, the

23   name of the beneficiary of the note, and the amount of the debt owing.  (Dkt. No. 7 at 5-9.)  This

24

1   was made known to Plaintiffs roughly three months before the scheduled foreclosure.  Second,

2   upon receipt of Plaintiffs' requests to validate the debt, Aurora sent several letters explaining the

3   basis for the foreclosure, the name of the creditor/beneficiary, as well as a copy of the deed of

4   trust and promissory note.  (Dkt. Nos. 16-5, 16-6, 16-7.)  Plaintiffs do not challenge the accuracy

5   of these letters and the Court considers them as properly part of the record in deciding the motion

6   to dismiss.  Plaintiffs argue instead that validation requires "presentment of the account and

7   general ledger statement signed and dated by the party responsible for maintaining the account."

8   (Dkt. No. 33 at 2.)  Aurora did provide a copy of the payoff statement of the debt and validated

9   its accuracy.  (Dkt. No. 16-5 at 2.)  Plaintiffs have not made out a valid FDCPA claim where the

10   uncontroverted record shows adequate compliance with the FDCPA.

11        The Court therefore GRANTS Defendants' motion and DISMISSES the FDCPA claim.

12   D.    <u>RESPA</u>

13        Plaintiffs do not contest the motion to dismiss their RESPA claim.  The Court addresses it

14   briefly and finds it subject to dismissal.

15        RESPA requires lender to make a timely response to a qualified written request from a

16   borrower about the servicing of their loan.  12 U.S.C. § 2605(e).  The record here shows that

17   Defendants provided Plaintiffs with a timely response to the qualified written request and

18   Plaintiffs have not alleged any basis on which the response was inadequate.  The Court

19   DISMISSES this claim.

20   E.    <u>TILA</u>

21        Plaintiffs' claims asserted under TILA are barred by the statute of limitations.

22        Claims for rescission under TILA must be brought within three years of the

23   consummation of a loan where certain disclosures are not made to the borrower.  Section 1635(f)

24

ORDER GRANTING MOTION TO DISMISS- 6

1  of Title 15 states that "[a]n obligor's right of rescission shall expire three years after the date of

2  consummation of the transaction or upon the sale of the property, whichever occurs first. . . ."  In

3  Beach v. Ocwen Federal Bank, the Supreme Court held that "section 1635(f) completely

4  extinguishes the right of rescission at the end of the 3 year period."  523 U.S. 410, 412 (1998).  A

5  party who fails to file suit within three years of obtaining a loan is barred from asserting any

6  claims for rescission under TILA without any ability to invoke the principle of equitable tolling.

7  See Miguel v. Country Funding Corp., 309 F.3d 1161, 1164-65 (9th Cir. 2002).  Here, Plaintiffs

8  obtained a loan on May 23, 2007 and did not file suit until August 31, 2011.  This is outside the

9  three year statute of limitations. As such, Plaintiffs' TILA claim for rescission is barred and

10  dismissed with prejudice.

11       Claims for statutory damages under TILA must be brought within one year of the

12  consummation of the transaction.  15 U.S.C. § 1640(e).  "The limitations period in Section

13  1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable

14  tolling may, in the appropriate circumstances, suspend the limitations period until the borrower

15  discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the

16  basis of the TILA action." King v. California, 784 F.2d 910, 914-15 (9th Cir. 1986).  Here,

17  Plaintiffs did not file suit within one year and they have not advanced any reason that equitable

18  tolling should be applied.  Plaintiffs' claim for damages under TILA is DISMISSED.

19  E.       Deed of Trust Act Claims

20       Plaintiffs have variously alleged that Defendants violated Washington's Deed of Trust

21  Act in the non-judicial foreclosure process.  The record does not support any claims and

22  Plaintiffs have not opposed dismissal of these claims.

23

24

1         Plaintiffs contend that the replacement of their original lender with Aurora as the

2 beneficiary to the deed of trust was invalid. (Compl. ¶ 27.) The documents Plaintiffs attach to

3 their complaint, however, show that Aurora was appointed as a successor beneficiary by MERS.

4 (Dkt. No. 1 at 37.) This was dated September 20, 2010, and recorded October 6, 2010. Aurora

5 then appointed Cal-Western as trustee in a document signed September 29, 2010, and recorded

6 October 11, 2010. (Dkt. No. 1 at 34-35.) There is nothing on the face of these documents

7 showing any violation of the Deed of Trust Act and Plaintiffs have not advanced any cogent

8 theory suggesting a violation occurred. The Court finds no basis for Plaintiffs' alleged violation

9 of the Deed of Trust Act and GRANTS Defendants' motion on this issue.

10         Plaintiffs' complaint contains a vague challenge to the legitimacy of MERS to establish a

11 lien. (Compl. ¶ 28.) However, there are no facts pleaded or in the documents appended to the

12 complaint showing that MERS has acted to foreclose on Plaintiffs' home or file a lien. Rather,

13 only Cal-Western and Aurora are acting (or have acted) to foreclose on Plaintiffs' home to

14 secure their interest in the loan. Plaintiffs have failed to show any violation of the Deed of Trust

15 Act by MERS. Plaintiffs have also failed to oppose Defendants' motion seeking dismissal of the

16 claims against MERS. The Court GRANTS Defendants' motion and the claims against MERS.

17 F.      <u>Fair Credit Reporting Act</u>

18         Plaintiffs allege Aurora violated the Fair Credit Reporting Act ("FCRA") by reporting the

19 outstanding balance on the loan on Plaintiffs' credit reports. (Compl. ¶ 20 (citing an incorrect

20 provision of the U.S. Code).) This claim is untenable.

21         A person may violate the FCRA by furnishing information "relating to a consumer" to a

22 CRA "if the person knows or consciously avoids knowing that the information is inaccurate." 15

23 U.S.C. § 1681s-2(a)(1). Congress however did not provide a private cause of action to enforce

24

1   this provision of the law.  Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th

2   Cir. 2002).  Enforcement of this provision is instead left to federal and state agencies and

3   officials identified in the FCRA.  To properly dispute information given to a credit reporting

4   agency, the aggrieved individual must first notify the credit reporting agency.  15 U.S.C. §

5   1682i(a)(1), (2).  Only after the person satisfies this element may he or she pursue a claim under

6   the FCRA.

7          Here, Plaintiffs do not have a cause of action under the FCRA.  Plaintiffs have not

8   alleged that they have disputed the accuracy of the debt owed to any credit reporting agency.

9   Rather, they have only shown a dispute with the parties of this case, none of which is a credit

10  reporting agency.  Plaintiffs' claim that Defendants furnished information about the debt to credit

11  reporting agencies is not therefore actionable.  Plaintiffs have not set forward a plausible claim

12  under FCRA.  The Court GRANTS Defendants' motion on this issue and DISMISSES the

13  FCRA claim.

14  G.     Consumer Protection Act

15         Plaintiffs allege that Defendants have violated the Washington Consumer Protection Act.

16  Plaintiffs make only one conclusory statement to support this claim: "[t]his case also arises under

17  . . . . the Washington Consumer Protection Act." (Compl. ¶ 9.)  Plaintiffs must do more than

18  simply name the law to state a cause of action.  See Twombly, 550 U.S. at 555 (labels and

19  conclusions are inadequate to survive dismissal).  The Court GRANTS Defendants' motion on

20  this issue and DISMISSES Plaintiffs' CPA claim.

21                                      **Conclusion**

22         Defendants have adequately demonstrated that Plaintiffs' complaint fails to present any

23  claims on which relief can be granted.  The Court therefore GRANTS Defendants' motion and

24

ORDER GRANTING MOTION TO DISMISS- 9

1  DISMISSES Plaintiffs' complaint.  Dismissal is with prejudice only as to the FDCPA, TILA,

2  and RESPA claims.

3          The clerk is ordered to provide copies of this order to all counsel.

4          Dated this 9th day of January, 2012.

5

6

7          _____
           Marsha J. Pechman
8          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION TO DISMISS- 10